IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BARBARA ANN MILLER, individually and
as Trustee of the LCDR Donald G. Miller
Trust; STEVEN L. MILLER-HART,

     Plaintiffs,

   v.

STATE OF OREGON *et al.*,

     Defendants.

Case No. 3:26-cv-00220-SB

**FINDINGS AND
RECOMMENDATION**

**BECKERMAN, U.S. Magistrate Judge.**

On January 30, 2026, Plaintiffs Barbara Ann Miller and Steven L. Miller-Hart

("Plaintiffs"),[1] self-represented litigants, filed this civil Racketeer Influenced and Corrupt

Organizations Act ("RICO") action. (Compl., ECF No. 1.) Plaintiffs filed an amended complaint

on February 2, 2026. (Am. Compl., ECF No. 3.)

///

---

[1] Plaintiff Barbara Ann Miller appears in her individual capacity and as trustee for the
LCDR Donald G. Miller Trust (the "Trust"). (*See* Notice Errata SAC, ECF No. 15.) The Trust
holds title to Don Miller Farms and is the legal owner of the Miller Farm Retreat LLC. (SAC ¶
11.)

PAGE 1 – FINDINGS AND RECOMMENDATION

On February 23, 2026, the Court ordered Plaintiffs to show cause why the Court should not dismiss the amended complaint for failure to state a claim or file a second amended complaint curing the identified pleading deficiencies. (Order Show Cause, ECF No. 10.) On March 9, 2026, Plaintiffs filed a second amended complaint. (Second Am. Compl. ("SAC"), ECF No. 14.)

In their second amended complaint, Plaintiffs seek $60 million in damages and other relief from a long list of defendants:

- State of Oregon

- Oregon Department of Justice

- Former Attorney General Ellen Rosenblum

- Attorney General Daniel Adam Rayfield ("AG Rayfield")

- Oregon Department of Human Services ("DHS")

- DHS Adult Protective Services

- DHS Estate Administration Unit ("DHS-EAU")

- DHS Risk Management Division

- Hood River County, Oregon ("HRC")

- HRC Director Allison Williams

- Former HRC Director Jeff Hecksel

- HRC Principal Planner Eric Walker

- Diamond Fruit Growers, Inc.

- Amerititle Escrow Company

- Bradley Veo Timmons

- Randy M. Kiyokawa of Kiyokawa Family Orchards, Inc.

PAGE 2 – FINDINGS AND RECOMMENDATION

- James Klein ("Klein") and Leo Sandoval of KA-Klein and Associates

- Attorney B. Gil Sharp

- Attorney Garrett R. Sharp

- Attorney Mark Sandri

- Attorney Daniel Drazan

- Attorney Joshua D. Stadtler

- Attorney Ty K. Wyman

- Attorney Teunis G. Wyers

- Dunn Carney LLP

- Oregon State Bar Executive Director Helen M. Hierschbiel

- Does 13-50

(*Id.*) (together, "Defendants").

For the reasons discussed below, the Court recommends that the district judge dismiss the second amended complaint because Plaintiffs' claims are barred by the applicable statutes of limitations.

## LEGAL STANDARDS

### I.    PLEADING REQUIREMENTS

The Federal Rules of Civil Procedure require a plaintiff to state "a short and plain statement" in a complaint showing that the plaintiff is entitled to relief. *See* FED. R. CIV. P. 8(a)(2). To state a claim for relief, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

PAGE 3 – FINDINGS AND RECOMMENDATION

inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"A trial court may act on its own initiative to note the inadequacy of a complaint and dismiss it for failure to state a claim, but the court must give notice of its sua sponte intention to invoke Rule 12(b)(6) and afford plaintiffs 'an opportunity to at least submit a written memorandum in opposition to such motion[.]'" *Wong v. Bell*, 642 F.2d 359, 361-62 (9th Cir. 1981) (citations omitted); *Hatheway v. DeFeo*, 846 F. App'x 573, 573 (9th Cir. 2021) ("The district court properly dismissed [the plaintiff]'s action sua sponte after giving [the plaintiff] 'notice of its sua sponte intention to invoke Rule 12(b)(6) and afford[ing her] an opportunity to . . . submit a written memorandum in opposition to such motion[.]'" (first citing *Wong*, 642 F.2d at 62; and then citing *Iqbal*, 556 U.S. at 678)); *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim sua sponte under [Rule] 12(b)(6).").

## II.    SELF-REPRESENTED LITIGANTS

Courts "have a duty to read a pro se complaint liberally," *Sernas v. Cantrell*, 857 F. App'x 400, 401 (9th Cir. 2021), and should treat "pro se litigants . . . with 'great leniency' when evaluating compliance with 'the technical rules of civil procedure.'" *Seals v. L.A. Unified Sch. Dist.*, 797 F. App'x 327, 327 (9th Cir. 2020) (quoting *Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986)). The Supreme Court, however, has also recognized that "[d]istrict [courts] have no obligation to act as counsel or paralegal to pro se litigants." *Pliler v. Ford*, 542 U.S. 225, 231 (2004). Thus, there are limits on the leeway that courts must afford to self-represented litigants.

*See Washington v. Kijakazi*, 72 F.4th 1029, 1039-40 (9th Cir. 2023) ("[T]here are limits to what a court must do to accommodate a party appearing pro se." (citing *Pliler*, 542 U.S. at 231)).

Furthermore, courts are generally not required to sift through a self-represented litigant's pleadings and exhibits to try to find a valid claim. *See Sernas*, 857 F. App'x at 401 (recognizing that "courts have a duty to read a pro se complaint liberally . . . [but are] not required to sift through allegations to see what unidentified causes of action a pro se [litigant] may have a claim for"); *Dickens v. Illinois*, 753 F. App'x 390, 392 (7th Cir. 2018) ("[T]he district court was not required to sift through [the self-represented litigant's] many exhibits to tease out a valid claim.").

## DISCUSSION

Plaintiffs attempt to plead civil RICO claims pursuant to 18 U.S.C. §§ 1962(c) and (d), along with supplemental state law claims. (*See generally* SAC.) The Court finds that Plaintiffs' claims are barred by the applicable statutes of limitations.

## I.    RICO

### A.    Applicable Law

The RICO statute provides that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" 18 U.S.C. § 1962(c). To state a claim under § 1962(c), a plaintiff must plausibly "allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010) (citations omitted). The Ninth Circuit has explained that a "pattern requires . . . at least two acts of racketeering activity" and that "[r]acketeering activity is any act indictable under several provisions of Title 18 of the United States Code, and includes the predicate acts of mail fraud,

PAGE 5 – FINDINGS AND RECOMMENDATION

wire fraud[,] and obstruction of justice.'" *Id.* (first quoting 18 U.S.C. § 1961(5); and then quoting *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004)). Where, as here, there are multiple defendants, a RICO plaintiff "must allege that each individual defendant engaged in a pattern of racketeering activity." *Phillips v. Lithia Motors, Inc.*, Civ. No. 03-3109-HO, 2006 WL 1113608, at *10 (D. Or. Apr. 27, 2006) (citations omitted).

Section 1962(d) makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." *Sanford*, 625 F.3d at 559 (quoting 18 U.S.C. § 1962(d)). A plaintiff "cannot claim that a conspiracy to violate RICO existed if [he fails] adequately [to] plead a substantive violation of RICO." *Id.* (quoting *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000)). Thus, a plaintiff's Section 1962(d) claim rises or falls with the Section 1962(c) claim. *See id.* ("Because we conclude that the section 1962(c) claim cannot be saved by amendment, it follows that the section 1962(d) claim also cannot be saved. Denial of leave to amend the complaint to add this claim was therefore proper."); *Sadorra v. Starlight Dunes HOA*, No. 24-1754, 2025 WL 1500514, at *1 (9th Cir. May 27, 2025) (affirming dismissal of RICO claim and noting that the plaintiff failed to state a claim, the plaintiff's complaint was frivolous, and to "plead a RICO conspiracy claim, the plaintiff must first adequately plead a substantive violation of RICO" (citing *Sanford*, 625 F.3d at 557, 559)).

"The limitations period for civil RICO claims is four years." *Douglas v. Kalanta*, No. 23-15104, 2024 WL 1795160, at *2 (9th Cir. Apr. 25, 2024) (citing *Agency Holding Corp. v. Malley-Duff Assocs., Inc.*, 483 U.S. 143, 156 (1987)). "The Ninth Circuit has 'faithfully followed' the 'injury discovery' rule, which has two components[.]" *Id.* (quoting *Grimmett v. Brown*, 75 F.3d 506, 510-11 (9th Cir. 1996)). The first component of the "injury discovery rule" is that the "RICO limitations period begins to run when a plaintiff knows or should know of the

PAGE 6 – FINDINGS AND RECOMMENDATION

injury that underlies his cause of action[; in other words, he] need not discover that the injury is part of a pattern of racketeering for the period to begin to run." *Id.* (quoting *Grimmett*, 75 F.3d at 510). The second component of the "injury discovery rule is the separate accrual rule, which provides that a new cause of action accrues for each new and independent injury, even if the RICO violation causing the injury happened more than four years before." *Id.* (quoting *Grimmett*, 75 F.3d at 510).

> **B.    Analysis**

Following a careful review of Plaintiffs' second amended complaint and exhibits attached thereto, the Court finds that Plaintiffs' alleged RICO claims are time-barred.

Plaintiffs' allegations date back to a civil adverse possession case filed in Hood River County in 1963. (SAC ¶ 26.) Plaintiffs allege that the "1965 Stipulated Decree" in that case is the "legal cornerstone of Plaintiffs' property rights." (*Id.*) Plaintiffs now allege that the long list of Defendants constitute an enterprise that has engaged in a pattern of racketeering to interfere with Plaintiffs' property rights since 2006. (*Id.* ¶¶ 27-28.) Specifically, Plaintiffs allege that Defendants have been operating through "coordinated illegal conduct directed at the common goal of: (a) suppressing the Miller family's property rights established by the 1965 Stipulated Decree; (b) extinguishing the [] Trust's agricultural operations; (c) eliminating the Miller Farm Retreat LLC wedding venue and all associated revenues; and (d) concealing the enterprise's conduct through institutional capture of state and local oversight channels." (*Id.* ¶ 27.)

Plaintiffs' allegations focus primarily on a series of events that occurred in April 2015, which they refer to as the "Quintuple RICO Event." (*Id.* ¶¶ 29-47.) Specifically, on April 17, 2015, DHS-EAU recorded an allegedly illegal levy against the Trust, HRC revoked an event license for the Miller Farm Retreat, and Diamond Fruit Growers terminated a contract with Don Miller Farms. (*Id.*) Plaintiffs allege that "[t]he probability of three independent actors - a state

PAGE 7 – FINDINGS AND RECOMMENDATION

agency (DHSEAU), a county government (HRC), and a private cooperative (DFG) – all independently choosing April 17, 2015 to deliver unwarranted, economically catastrophic blows against the same [] Trust and Don Miller Farms, absent coordination, is negligible, approaching zero." (*Id.* ¶ 46.) Plaintiffs further allege that another RICO "flashpoint" occurred on July 12, 2019, when Klein (a licensed surveyor) recorded a partition plat "without excavating or confirming the recorded 1905 senior iron bar and brass cap survey monuments prior to recording." (*Id.* ¶¶ 49-54; *see also id.* ¶ 26, alleging that in 1905, HRC recorded senior iron bar and brass cap survey monuments which established relevant property boundaries.)

The Court explained in its Order to Show Cause that claims arising from these events are time-barred, Plaintiffs failed to allege any specific facts to suggest that they did not discover their injuries at the time of the events in question, and Plaintiffs' vague allegations of concealment were insufficient to avoid RICO's statute of limitations. *See, e.g.*, *Torres v. McDonnell*, No. 23-cv-04276-SI, 2023 WL 5836811, at *6 (N.D. Cal. Sept. 8, 2023) ("The RICO cause of action fails to state a claim for numerous reasons, including that the events underlying the claim are barred by RICO's four-year statute of limitations[.]") (citation omitted).

In the SAC, Plaintiffs now allege they did not discover their injuries resulting from these 2015 and 2019 events until March 10, 2025, when they allegedly discovered the "coordinated enterprise nature of HRC's actions—operating in concert with DHS-EAU and DFG[.]"[2] (SAC ¶¶ 41, 47.) As an initial matter, it is irrelevant that Plaintiffs discovered the "coordinated enterprise" in 2025 when they clearly acknowledge that they were aware of their alleged injuries back in

---

[2] Plaintiffs allege two additional discovery events—the date they realized that trusts have statutory immunity (November 6, 2025) and the date Klein acknowledged that he had not excavated the relevant property prior to recording (July 12, 2023)—but neither discrete event supports Plaintiffs' discovery of a vast RICO conspiracy on those dates. (SAC ¶¶ 35,54.)

PAGE 8 – FINDINGS AND RECOMMENDATION

2015.[3] *See Mir v. Greines, Martin, Stein & Richland*, No. 2:14-4132-CAS(FFMx), 2015 WL 12746231, at *13 (C.D. Cal. Feb. 19, 2015) ("The four-year civil RICO limitations period runs from the moment the plaintiff discovered or should have discovered an injury to himself, not from the time it discovered the alleged pattern of predicate acts. Once the limitation period starts to run, the occurrence of a later predicate act does not restart the limitations period on the initial act.") (citation omitted), *aff'd*, 676 F. App'x 699 (9th Cir. 2017).

In addition, Plaintiffs do not allege how they discovered the coordinated enterprise on March 10, 2025, and they do not allege any facts in their second amended complaint (or in the 256 pages of exhibits), reflecting any specific event that occurred on March 10, 2025. Nor could Plaintiffs plausibly allege that on this single date they first became aware of an enterprise comprised of an unrelated web of dozens of state and county agencies, federal, state, and county elected officials, private companies, law firms and individual lawyers, and other individuals conspiring together for decades to engage in illegal conduct to interfere with Plaintiffs' family farm. The alleged conspiracy is not plausible and it is clear that Plaintiffs are attempting to plead a RICO conspiracy for the purpose of reviving claims that have been time-barred for years.

Plaintiffs further allege that Defendants concealed their conspiracy by, *inter alia*, not offering an explanation for their coordinated April 17, 2015 actions and by keeping certain

---

[3] In fact, Plaintiffs acknowledge in the exhibits attached to their complaints that they became aware of the alleged fraud well over four years ago. (*See, e.g.*, ECF No. 1-2 at 24, "Please Take Notice That SOL Statute of Limitations Does Not Impair This RICO Criminal Matter. Plaintiffs discovered the existence and concealment of scaled DHS-APS records in April 2016 and have pursued continuous, uninterrupted relief efforts for nearly a decade, including State DOJ, Oregon Supreme Court review, federal law-enforcement engagement, and 1-6-26 escalation to the Office of Inspector General."; *see also* ECF No. 1-4 at 26, "Federal notice has been continuous since no later than 2018, with roots extending to April 17, 2015[.]")

PAGE 9 – FINDINGS AND RECOMMENDATION

Oregon DHS-APS records sealed since 2006.[4] (SAC ¶ 56.) Plaintiffs assert that as a result of Defendants' concealment, they could not have discovered the alleged RICO conspiracy despite exercising "extraordinary diligence," including:

- Retaining five attorneys;

- Filing twenty-one OSB ethics complaints;

- Filing state case no. HRC-21CV04347;

- Conducting five Federal Bureau of Investigation interviews;

- Submitting formal complaints to U.S. Senator Ron Wyden, AG Rayfield, and the DOJ Office of Inspector General; and

- Hand-delivering four hundred pages of "Rule 9.05 RICO evidence" to federal and state authorities.

(*Id.* ¶ 57.[5])

"Equitable tolling doctrines, including fraudulent concealment, apply in civil RICO cases." *Pincay v. Andrews*, 238 F.3d 1106, 1110 (9th Cir. 2001) (citation omitted). "The doctrine is properly invoked only if a plaintiff establishes affirmative conduct upon the part of the defendant which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief." *Id.* (citation omitted).

///

///s

---

[4] Plaintiffs also allege that the Oregon State Bar did not issue "identifiers" for Plaintiffs' twenty-one ethics complaints and that Dunn Carney failed to disclose certain documents during a 2023 judicial settlement conference. (SAC ¶ 56.)

[5] Plaintiffs note several additional efforts, including contacting the Oregon Court of Appeals, Oregon Commission on Judicial Fitness and Disability, Oregon Secretary of State, Oregon's Governor, the United States Attorney, and U.S. Senator Jeff Merkley. (SAC ¶ 60.)

PAGE 10 – FINDINGS AND RECOMMENDATION

Even if Plaintiffs could plead a plausible theory of concealment, the Court finds that Plaintiffs had actual or constructive notice of their injuries in 2015 when they became aware of the coordinated actions that they now allege were part of a conspiracy. *See id.* (holding that the plaintiffs "cannot prevail on their fraudulent concealment claim" where they "had constructive notice of their injuries . . . as a matter of law"). This is evident from the nature of Plaintiffs' allegations and claims (i.e., they received contemporaneous notice of the illegal levy, event license revocation, and contract termination), but also from the dozens of pages of correspondence attached to Plaintiffs' complaints that date back many years alleging the same fraudulent conduct.

For these reasons, the district judge should dismiss Plaintiffs' SAC under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[6] *See Sadorra*, 2025 WL 1500514, at *1 (affirming dismissal of self-represented litigant's RICO claim where the plaintiff "failed to allege facts sufficient to state a plausible claim and the complaint is frivolous") (citations omitted); *see also Doe v. Kosicek*, No. 6:25-cv-00110-AA, 2025 WL 1784811, at *3 (D. Or. June 27, 2025) ("The Court finds that [the] plaintiff has failed to allege facts sufficient to state a plausible [RICO] claim and the complaint is frivolous.") (citations omitted).

## II.    STATE LAW CLAIMS

Plaintiffs also allege supplemental state law claims for the alleged "Quintuple RICO Events" that occurred in April 2015, i.e., the illegal levy, license revocation, and contract

---

[6] Although it is not common for courts to dismiss complaints sua sponte where the plaintiffs paid the filing fee, here Plaintiffs have clearly failed to state a viable RICO claim and the Court plays an important gatekeeping role in saving Plaintiffs the cost of service on several defendants and saving Defendants the cost of defending against meritless claims. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (holding that "the factual allegations [in a complaint] that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation").

PAGE 11 – FINDINGS AND RECOMMENDATION

termination. (SAC ¶¶ 69-73.) Even assuming Plaintiffs could state valid state law claims relating to these alleged events, any such claims based on the 2015 events are also time-barred for the reasons discussed above. *See* OR. REV. STAT. § 12.080 (establishing a six-year statute of limitations for "[a]n action upon a contract or liability, . . . [a]n action upon a liability created by statute, . . . [a]n action for waste or trespass upon or for interference with or injury to any interest of another in real property, [and] [a]n action for taking, detaining or injuring personal property, including an action for the specific recovery thereof"); OR. REV. STAT. § 12.110 (establishing a two-year statute of limitations for most torts).

## CONCLUSION

For the reasons stated, the Court RECOMMENDS that the district judge dismiss Plaintiffs' second amended complaint (ECF No. 14) with prejudice because Plaintiffs' RICO claims are time-barred and the Court has already provided Plaintiffs with an opportunity to cure the fatal pleading deficiencies.[7]

## SCHEDULING ORDER

The Court will refer its Findings and Recommendation to a district judge. Objections, if any, are due within fourteen (14) days of service. If no objections are filed, the Findings and

---

[7] *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008), as amended (Aug. 26, 2008) (affirming dismissal with prejudice for failure adequately to plead a required element of the claim where the plaintiff could "point[ ] to no additional facts that it might allege to cure these deficiencies") (citation omitted); *Cunningham v. Sony Pictures Ent.*, No. 3:17-cv-1686-SI, 2018 WL 1976449, at *2 (D. Or. Apr. 26, 2018) (dismissing claims with prejudice where the statute of limitations "ran many years ago," the plaintiff had "made several unsuccessful attempts to bring a defamation action against Defendants in both state and federal court," and the plaintiff would "not be able to correct the deficiencies in either his state law or [federal] claims through amended pleading"), *aff'd*, 765 F. App'x 395 (9th Cir. 2019); *Lorenz v. Deutsche Bank Nat'l Tr. Co.*, No. 3:15-cv-680-SI, 2015 WL 5813174, at *5 (D. Or. Oct. 5, 2015) (dismissing self-represented plaintiffs' RICO claims with prejudice where their "Second Amended Complaint fails to contain sufficient factual allegations plausibly to suggest an entitlement to relief") (citation omitted).

PAGE 12 – FINDINGS AND RECOMMENDATION

Recommendation will go under advisement on that date. If objections are filed, a response is due within fourteen (14) days. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

**IT IS SO ORDERED.**

DATED this 17th day of March 2026.

HON. STACIE F. BECKERMAN
United States Magistrate Judge